We'll move on after a brief opportunity for people to rearrange themselves to the third case of the day, United States v. Freed, No. 17-2816. If everyone's ready, then we'll proceed. Mr. Kline. Thank you, Your Honor. Good morning. My name is John Kline, and I represent the appellant, Laurance Freed. The principal issue that I want to discuss is the instructional issue. And let me say up front that I am arguing here that giving a pattern instruction was plain error, and I recognize that I've got a heavy burden to carry that argument. To make the point that this was plain error, I want to focus on the second of the two instructions that is of concern. The one dealing with Section 2B. That's what I call the willfully causing instruction. And I think we all know that that instruction has been given probably thousands of times by district judges. It's probably been objected to very rarely because it's a pattern instruction. And yet that instruction is plainly wrong. Most obviously it's wrong because it substitutes the mental state of knowingly for the statutory term willfully. And that's not some academic difference. There is a real meaningful difference between a requirement that a person act willfully and a requirement that a person act knowingly. Willfully, as defined by the Supreme Court in Bryan and by several circuits in their pattern instructions, means acting with a bad purpose, with knowledge that you're violating the law. That is a steep burden, and it's an important obstacle to conviction for the government. The term knowingly, which is what's used in the pattern instruction and what was used here, particularly as defined by the district court in this case, means little more than that you are aware of what you're doing. You're conscious of the act that you are engaging in. By and large, that's correct. Beg your pardon? By and large, that's correct in the entire field of criminal law. It is correct. Let me put it this way, Your Honor. That definition of knowingly is a standard definition of knowingly, and I'm not quarreling with that definition of knowingly. What I'm saying is that the statute says willfully, and knowingly has been substituted for willfully. You'd have to show, wouldn't you, that he was not being coerced or being pushed or somebody else was doing it and he was accepting it? I'm sorry, Your Honor. I'm a little deaf, so forgive me. Well, so am I. What is wrong with the definition in the pattern instruction in any case other than yours? The problem is most fundamentally the substitution of knowingly for willfully, and here's why that makes a difference. The term knowingly, as Your Honor points out, is standard in the criminal law to basically mean that you know what conduct you're engaging in. There is no requirement that you know that you act with a bad purpose, that you act with knowledge that you are behaving illegally. The term willfully, which is the statutory term, and as defined by the Supreme Court and by several circuits that have included in their pattern instructions, requires that you act with a bad purpose to disobey or disregard the law. That's different, and it really matters in a case like this. Did you try the case? No, I did not. I'm sorry?  There was no objection to the instruction. That's why we're here on plain error. Actually, there is a threshold question about whether we even get to plain error and treat this as a waiver of objections to the aiding and abetting instruction. As I understand it, is it correct, Mr. Kline, that actually the conference, the discussion about jury instructions was pretty prolonged in this case, and the defense raised a number of objections, some of which were sustained, and the defense version was accepted? That's true. Well, we've had our recent cases that say, well, we'll treat this kind of rote call and response, no objection, as maybe just going with a forfeiture instead of a waiver. But compare that to the way we handle sentencing cases, where if somebody, if a defendant raises, let's say, two or three or four specific guideline objections or PSR objections, we will treat that as a deliberate decision to forego raising other objections that might have been raised at the time, because apparently nobody really cared about the aiding and abetting instruction once the other defendant dropped out of the case. Well, let me say this, Your Honor. First of all, it's true that there was a lengthy jury instruction conference in this case, and there were objections raised. On this particular one, though, it was a pure call and response. Instruction number, proposed instruction number 23. As if defense counsel, who were very capable lawyers, were asleep at the switch here? Is that the idea? Well, here's what I would say about that, Your Honor. They were very capable. I have no dispute with that whatsoever. In fact, your client got a pretty phenomenal result in many ways. He's sitting in prison, so he might disagree with you. I understand that, but I also am somewhat familiar with the evidence in the case. But here's what I would say. I think that because this is a pattern instruction, it is a habit of lawyers, including very good lawyers, to kind of gloss over it without really thinking about it. And I say that because I try cases myself, and I've done that myself. So I'm not saying that to cast aspersions on the trial lawyers. It happens. And what happens when these instructions are given time after time after time, sort of by rote, people stop thinking about them. And this instruction is a classic example. And you mentioned, Your Honor, the eating and abetting instruction, and the government says that was aimed primarily at the defendant who dropped out. Well, let's focus for a second on the willfully causing instruction, because that's an instruction. So we're talking now about 18 U.S.C. Section 2B. Whoever willfully causes another to do an act that would be an offense if he did it himself is liable as a principal. I'm paraphrasing. That statute is not aimed at an underling like the defendant who pled out. That statute is aimed at people in charge who don't do all the acts themselves, but who direct others to do them, and that's Mr. Freed. At least that's the government's view of Mr. Freed. He was in charge of this. A lot of the things that happened in this case he didn't do. He didn't prepare the PowerPoint. He didn't draft the affidavits. A lot of the communications back and forth with the banks he didn't handle. So that instruction in a close case where the jury is seven not guilties, eight guilties, and I interpret the verdict to be a pretty clear compromise because it's wildly inconsistent, that type of instruction for a man like Mr. Freed who is in charge and who didn't do a lot of the individual acts himself could be a crucial instruction. Was that the closing argument that Mr. Freed's trial counsel offered in closing, a benign neglect type approach? His instruction was basically good faith. I mean his argument, forgive me, was basically a good faith lack of intent argument, which that manifests itself in different ways for different counts because there are several different sort of discrete factual settings here, but that was the basic argument. And again, going back to the willfully versus knowingly issue, that's a critical distinction because if you're arguing good faith, an instruction that you have to have a bad purpose to disobey or disregard the law is much different than an instruction that you merely have to act knowingly, meaning you knew the conduct that you were engaging in. So it's an instruction, and I'm particularly focusing now on the Section 2B instruction, it's an instruction that really could make a difference in this case, particularly the way it played out in the verdict, where you have a split verdict, inconsistent verdicts. The only way to read that, I believe, is two factions that compromise, and where you have an instruction that waters down the mens rea in a case where good faith is the defense, that's a significant event, which begs the question, why no objection? And, you know, there's nothing in the record, of course, so I'm speculating, but I'm speculating in a sort of educated way because I've been there and I've done that. I know how it is with pattern instructions. After a while, people don't look at them anymore. They just gloss over them, and judges give them, lawyers don't object to them, and sometimes they're wrong, and this is an example of that. The Section 2B instruction is far and away the best example of an instruction that's just wrong. How do you go from willfully to knowingly? Could you add in your opinion? I'm sorry? Could you add to the sentence, in my opinion? I can add. I'll put that over everything I'm saying. Your Honor, let me go back for a second to the waiver issue because that is a threshold issue, the government has raised it, and it obviously could be determinative if you find that it's a waiver. The cases that we rely on, of course, are a recent line of cases, starting with, I'm going to mispronounce it, Natal or Natali. There's Al-Awadi, Briceño, Ajayi, and the trend in all those cases is away from finding a simple no objection to be a waiver, and the reason is that a waiver is a knowing and intentional surrender. It's a conscious, knowing, intentional decision not to challenge something. And when you simply have a no objection, it's sort of hard to infer that from that sparse record. So the court has tended to treat these as forfeitures, meaning plain error review, rather than waivers, meaning the issue is gone. Did we actually reverse any of those? No, you did not. You analyzed for plain error and found no plain error. And no difference between a result under waiver or plain error. No, that's true. Here, though, I think there is a difference, because if you find a waiver, I just lose. And if you find, if you do a plain error analysis, and again I'm particularly focusing on the Section 2B instruction, I think all of the requirements of plain error are met here. I've only got a, I want to save a few minutes for rebuttal, but let me just say one thing about count 16. We have some sufficiency of the evidence issues. To me, they are less significant than the instructional issue, but count 16 I particularly want to comment on. It's an agreement between JFA, which is Mr. Fried's company, or one of his companies, and Bank of America, and it includes a provision that sets conditions precedent for withdrawing money from a project called the Streets of Woodfield. And the evidence showed that JFA breached that condition precedent. In other words, it withdrew money from Streets of Woodfield without satisfying that condition precedent. That's, in the government's view, that is a false statement and violates Section 1014. I don't think a breach of a provision like that, that it does not involve a representation. I thought the theory was that there was no intent at the time to comply with that condition. That's really the theory on count 14, where there is a representation that JFA will attempt to obtain the release of the tip note by a certain date. And the government says, when that was signed on September 17, 2009, there was no intention to try to get a release by October 31, 2009. The problem with count 16 is there is no statement at all. There is simply a provision that says, in an agreement, that says you can't withdraw money unless certain conditions are met, and the allegation that those conditions weren't met, and that gets translated into a false statement count. That should not be a false statement, because if it is, then almost any breach of a contract can be a false statement count. I'm going to leave with your honor. Thank you very much, Mr. Kline. Mr. Fullerton. Good morning. May it please the Court. The instruction on the pattern instruction on aiding and abetting was not erroneous. It was not plainly erroneous. Mr. Freed waived any objection to that instruction. I think we could infer a waiver from his no objection, because, as your honor pointed out, Mr. Freed did raise all sorts of objections to the other instructions in the case. Some of them were meritorious. Some were granted by the district court. Instructions were revised. Things were taken out. He offered no objection to this instruction, because it was correct. It correctly states the elements of aiding and abetting. The commission of a crime when you aid, counsel, command, induce, et cetera. It requires the commission of an offense, the knowing participation in the offense, and the association with the offense and attempting to make it succeed. That is, the sharing of the mental state required for the offense. Now, that instruction, of course, is read in context with all the other instructions in the case, which define the offenses under consideration by the jury and the elements of each of those offenses. That is, the mental state required for a false statement, the mental state required for a bank fraud scheme. The second paragraph of the pattern instruction, the one that my opponent is arguing about this morning, in a way we're like ships passing in the night on that instruction. I don't see it as a Section 2B instruction. I see it, rather, as a relatively common statement of agency responsibility that was appropriate in a case like this, which involved an organization, namely JFA, several organizations. JFA, which is one of the Freed real estate development companies. UGV, which is the Uptown Goldblatt Venture. There's all sorts of organizations. Freed had employees working for him. Freed had employees preparing PowerPoints, the monthly statement of account with Streets of Woodfield, for example, that basically concealed Freed's theft of money from his partner, Kimco, in the Streets of Woodfield project. So the statement that, or the instruction that one may knowingly act through another if you cause that person to do something means you're responsible for that act. Freed was not entitled to evade responsibility by saying, well, somebody else prepared the PowerPoint, or somebody else prepared the statement of accounts with Kimco, or somebody else performed the mailing or the wiring or something like that. So is the government's argument that the use of knowingly in the substantive instructions with regard to the counts of the superseding indictment is a belt and suspenders to this aiding and abetting? That there was sufficient definition in the substantive instructions such that any prejudice to the instruction given is insufficient? I think that's right. Those two instructions would be read together. And so an offense, which the first paragraph of the pattern talks about, would be an offense as defined elsewhere in the instructions, or as an offense under consideration by the jury in other portions of the instructions. And, of course, when you say it that way, then the jury is, of course, instructed in maybe the next paragraph or the following page of the instructions on the mental state required for the offense. So they're read together, and Freed's, I think, objection to the second paragraph is not well taken. It's not well taken for a further reason, which is, as I understand the argument today, he would be essentially requiring the government to prove in a case like this where Freed is acting through others to commit offenses to meet the willfully requirement of 2B. We didn't charge, the instruction doesn't cover 2B, and there is no further willfully element that must be layered on top of all the other mental state requirements of bank fraud, wire fraud, false statement, and so on. So, to sum it up, I think it's a relatively unobjectionable statement of agency responsibility that is appropriate for a case where Freed is the head of a large organization, many, many millions of dollars worth of real estate projects and employees who are working for him, and it's not plainly erroneous to say that he cannot evade responsibility if he knowingly causes the acts of another. Those are his acts. Returning to count 16, that was, if I remember correctly, that was the agreement, I believe it was with the bank consortium, the Bank of America was the lead bank on, not to withdraw funds from Streets of Woodfield unless certain conditions were met. And those conditions included basically that Streets of Woodfield have on hand the amount required for payment of its real estate taxes, that Streets of Woodfield have on hand the amounts required for the return of security deposits to its tenants, and so on. A reasonable working reserve is what the agreement called for. Now, the evidence was that when Freed made that representation, or made that agreement with the bank consortium, it was in the context of a loan agreement, a third or fourth extension. Maybe it was with Cole Taylor, but it was certainly a modification of an existing loan where Freed is attempting to stave off the day of reckoning, namely default, foreclosure, losing the properties. And when he made that representation or promise in the loan modification agreement, he had no intention of abiding by that agreement. The record showed that the day before, I believe it was like April 2nd of 2009, the day before that agreement was made, the cash reserves of Streets of Woodfield were something like $16,000. Now this was an entity with a real estate tax bill of something like $4 million annually. This is not a reasonable working reserve for any purposes for that entity. The day after Freed entered into that agreement, by then some additional $300,000 had come into that account that he shared with Kimco. The day after the agreement, Freed withdrew $273,000. The month of April 2009, Freed took out of that cash account something like $1.3 million. He continued to raid the Streets of Woodfield account that he shared with Kimco, and that showed, certainly the jury could reasonably believe, rationally believe, that when Freed made that statement to the bank to get that loan modification, he had no intention of abiding by that agreement, thus making it false in an effort to influence the bank's actions, to give him the loan modification, to stave off the day of reckoning, and so on. I believe I've covered everything that my opponent has raised this morning, but if there are any other questions, I'd be happy to answer. If not, we'd ask that the court affirm the conviction and sentence. Mr. Fullerton, let me ask you to address the line of cases dealing with waiver versus forfeiture on jury instructions. It's a line of recent cases. Are we headed in the right direction, the wrong direction? What do you think? You're a frequent customer here. I am a frequent customer. Of course, I would advocate for the stricter rule, namely that, as I had always understood it at jury instruction conferences, you're supposed to be on your A game. Every word in those instructions is important to the way the jury considers the case, what it's required to find, what it's supposed to consider, what it's not supposed to consider. And it's been my practice that every single word and every, from my experience, I should say, every instruction is scrutinized to the utmost. In my earlier career, there were no pattern instructions. You prepared your own. And in each case, somebody would come up with something unique. But you studied them carefully. Now they have the advantage of having the instruction ahead of time. They can read it. And so that everybody knows what instructions are going to be tendered and can prepare themselves for it. So you have advanced notice of what objections you might want to raise. That's what pattern instructions are for, to give you advanced notice of what you should argue and what. Now, it's also true that just the fact that an instruction is a pattern doesn't mean that the district court automatically gives it or automatically can give it necessarily. They may be tailored. They may be modified. The court refuses to give it, as in the Edwards case. Right. And that often happens. So, you know, if the court does move away from the strict rule of no objection equals waiver at instruction conferences, you know, in line with the idea that we're only going to find waiver if there was a, say, for example, strategic reason for not making an objection. Like we have a similar rule at sentencing. I think we've, you know, I think in this case there was a strategic reason. Namely, you don't want to press a non-meritorious argument when you have other meritorious arguments. You may have a bigger desire to prevail on. In other words, conserving one's credibility with the district court is a strategic reason, in my view. I think that's the case here. Certainly, if it wasn't a waiver, there was no plain error. Thank you. Thank you. Thank you, Your Honor. Okay. Thanks very much. Let's see. Mr. Klein, rebuttal. I'm going to talk fast. I believe the government just said that using the lesser knowingly standard rather than willfully is consistent with sort of standard agency principles. Here's my response to that. There's no federal common law. A federal theory of liability has to have a statutory basis. When you're talking about liability of either an aider and abetter or a causer, 18 U.S.C. Section 2A and 18 U.S.C. Section 2B set the requirements. For aiding and abetting, it's 18 U.S.C. Section 2A. It specifies certain requirements for that kind of liability. For causing somebody else, and as the government properly acknowledged just now, that is this case to a large extent because Mr. Freed didn't do a lot of these things himself. When you're talking about causing, you have to comply with 18 U.S.C. Section 2B. And, yes, the government groans at the prospect of having to prove willfulness, but that's what the statute says. That's what the statute says. And here in a case where a close case in the jury's mind, a case that the government, by its groaning, essentially concedes that that would be a stiff burden to meet, that's what the statute required. And Mr. Freed didn't get the benefit of that statute. That's plain error, and his conviction should be reversed. Thank you very much, Mr. Kline. And thanks to all counsel. The case will be taken under advisement.